McIlvaine, J.
The demurrer to the answer brings under *264 review the sufficiency of the petition, and the defendant claims that the facts stated in the petition do not entitle the plaintiff to the writ of mandamus, for the feason, that there is a plain and adequate remedy for the grievance complained of in the ordinary course of the law.
Section 6744 of the Revised Statutes provides that: “ The writ must not be issued in a case where there is a plain and adequate remedy in the' ordinary course of the law,” and, it is claimed, that such a remedy is furnished by an action on the treasurer’s bond.
It would seem that an action on the bond might be maintained under authority of section 168 of Revised Statutes, which provides: “ If any county treasurer or other officer concerned in the collection of the public revenues, or authorized to collect and pay into the state treasury money due or accruing to the state, fails to pay over all moneys by him received and belonging to the state, at the time and in the manner required by law, the auditor of state shall immediately inform the attorney-general thereof, who shall forthwith institute and prosecute the proper suit against such officer and his sureties.” The question therefore arises, would such suit afford “a plain and adequate remedy” within the meaning of section 6744? The object of the present action is to compel the transfer of certain funds belonging to the public revenues of the state, from the treasury of Hamilton county to the state treasury. A suit on the treasurer’s bond would not accomplish that object. Although the state in an action on the bond might recover the full amount of damages sustained, it would leave in the county •treasury the fund to which it is entitled, and to which the county treasury is not entitled.
In deciding the question now before us, it is worthy of remark, that section 6744 above referred to, is merely declaratory of the rule of the common law, which refused relief by ■the extraordinary writ of mandamus in cases where an adequate remedy was afforded by the usual and accustomed modes of procedure at law, and also, that section 168 does not declare a breach of an official bond that would not have existed without the section, and for which an action on the bond is the exclu *265 sive remedy. Hence no new rule has been established by this legislation, and it cannot be doubted that the jurisdiction by mandamus to compel payment from the public treasury, when such payment is a mere ministerial act, is a common and acknowledged right. See High on Ex. Legal Bern. § 112, and cases cited;
The defendant relies on the case of The State v. Meily, 22 Ohio St. 534, in which it was held that when money is wrongfully retained by a probate judge from the party entitled thereto, such party has a plain and adequate remedy by action on the official bond of the judge, or by an ordinary action against him for the money, and therefore mandamus will not be allowed to compel payment, until such ordinary remedy has been resorted to and proved ineffectual. In that case it was said that the retention of the money by the probate judge was his individual act — a conversion of it to his own use, and, no doubt, the identical money might be applied to the payment of a judgment recovered against him ; but on the facts before us, the money in the county treasury could not be withdrawn for the payment of a judgment on the treasurer’s bond at the option- of the treasurer. Such judgment and its payment would not transfer public funds from the county to the state treasury, and any remedy, which will not accomplish such transfer, is not adequate within the.meaning of this rule. There is no suspicion that the defendant is a defaulter or that he has embezzled public funds. To which treasury does this money belong is the only question in the ease, a mere question of law. If to the state treasury, it should be transferred, and mandamus is the only specific and appropriate remedy under the particular circumstances of the case.
It is also contended that the petition and writ are defective in not alleging that the money claimed is, in fact, in the .county treasury.
No doubt, a writ of mandamus should not be issued unless it appears that the thing commanded to be done is capable of being performed. The question, therefore, whether the funds sought to be transferred from the county treasury to the state-treasury, are,’ in fact, in the county treasury, is material. It *266 appears plainly enough that these funds, before the semi-annual settlement in September, 1881, had been received intp the county treasury, and we think it must be presumed that they remain there until the contrary is shown. In view of this presumption, the petition in this respect is not defective. If the issuance of the writ be resisted on the ground that the funds claimed are not in the treasury of the county, and under the control of the defendant, such state of facts must be shown by the defendant in his answer.
Are the facts stated in the fourth defense sufficient? The object of the pleader was to show that the defendant as treasurer of Hamilton county had no funds in his possession or under his control that were legally subject to the payment of relator’s claim. The answer contains such specific averment; but we understand this averment to be a mere conclusion based on facts set forth in the answer, and especially in the certificate and abstract made by the county auditor upon the last semi-annual statement on account of the taxes of 1880, which are fully set.forth and made a part of the answer. This certificate and abstract, which nre required and controlled by sections 1043, as amended April 19, 1881 (78 Ohio L. 226), and 1044 of the Revised Statutes, contain the controlling facts of the case in so far as they are made in conformity to law. Section 1043 provides that “the auditor shall attend at his office, on or before the 15th day of February, and also on or before the 10th day of August annually, to make settlement, with the treasurer of his county, and ascertain the amount of taxes with which such treasurer is to stand charged; and the auditor shall, at the August settlement, take from the duplicate, previously put into the hands of the treasurer for collection, a list of all such taxes as such treasurer has been unable to collect . . . . ; and after deducting the amount of taxes as returned delinquent, and the collection fees allowed the treasurer, from the several taxes charged on the duplicate, in a just and ratable proportion, the treasurer shall be held liable for the balance of such taxes; and the auditor after first correcting any error which may have occurred in the apportionment of taxes at any previous settlement, shall certify the *267 balance due to the state, the balance due to the county, the balance due for road purposes, and the balance due to the townships,” &c. And section 1044, after giving more specific directions as to the manner of making the settlement, requires that “ the auditor shall also make out and deliver to the treasurer a certificate specifying the amount charged on the tax duplicate of the county for each of the several purposes for which taxes have been levied; and also a certificate or an abstract of the taxes which have become due and payable and which remain unpaid,” &c.
Now it appears from the certificate and abstract of this settlement, as made by the auditor of the county, that after all proper deductions, to wit: the amount of delinquent taxes and the collection fees allowed the treasurer, had been made from the amount of the duplicate, the auditor found the balance, for which the treasurer should be held liable, to be $2,811,649.74, and that the proportion thereof due to the state for the sinking fund, general revenue and common school fund, was $291,658.63. But the certificate also shows that from this aggregate of the treasurer’s liability, the auditor further deducted the sum of $73,413.09 (thus reducing the liability of the treasurer to the sum of $2,738,236.65), on account of “net balance of errors corrected,” and thus reducing the amount due the state by the sum of $11,534.60, being its proportion of said deduction of $73,413.09, leaving a balance due the state of $280,124.03, from which balance, the sum $73,183.60, being the proportion of the common school fund to which Hamilton county was entitled, was retained by the treasurer, and deducted from $280,124.03, so found due to the state, and the remainder, plus $39.56 for special licenses, to wit: $206,979.99, was duly paid into the state treasury by the defendant in full, as is claimed, of the state’s proportion of the amount for which the treasurer of Hamilton county is held liable on account of the duplicate for the year 1880.
The auditor of Hamilton county having transmitted to the auditor of state a duplicate of said certificate and abstract as required by section 1045 of Revised Statutes, the auditor of state proceeded to examine the same as required by section 181 of *268 Revised Statutes, which provides, “ the auditor of state, immediately on the receipt of the certificates and abstracts of each semi-annual'settlement between the auditor and treasurer of each county, forwarded to him by the county auditor, shall proceed to examine the same, and ascertain the exact sum or sums payable by each county treasurer into the state treasury, and shall certify the same to the state treasurer, specifying in the certificate or certificates the amount belonging to each fund and the total amount to be paid into the state treasury; he shall also ascertain and certify to the state treasurer the amount of such county’s proportion of the state common school fund, and of school, ministerial and other trust funds, if any, due and payable to such county; and at the same time he shall issue his draft or drafts upon the county treasurer in favor of the state treasurer, for the sum or sums so found due and payable, after deducting the amount of the several sums found due to the county on account of school, trust, or other funds.”
On such examination the auditor of state ascertained the “ exact sum” due to the state to be $291,658.63, and after deducting therefrom the sum of $73,183.60, the county’s proportion of the state common school fund, drew his draft on the county treasurer in favor of the state treasurer for the remainder, plus the sum of $39.56 for special licenses, to wit: for the sum of $218,514.59. The treasurer of state, having given a credit, on his draft, of the money theretofore paid into the state treasury by the defendant, prosecutes this suit for the balance, to wit: $11,534.60, the same being the exact amount deducted from the state’s proportion of taxes on account of “ net balance of errors corrected ” as above stated.
1 The right of the state to this balance is not now submitted for our decision, but, we are clear, that if this right is.hereafter determined to be in the state, there are funds in the county treasury and under the control of the defendant, that should be subjected to its payment. The county auditor had no warrant or authority of law for deducting, from the amount for which the treasurer should be held liable, any sum whatever on account of “ errors corrected.” The only sums authorized to be deducted from the. full amount of the duplicate are two: *269 1st. The amount of delinquent taxes. 2d. The amount of the treasurer’s fees. The remainder is the amount for which the treasurer is' held liable, and the whole amount of this liability-should have been apportioned among the different funds for which the taxes were levied. This amount is $2,811,649.74. The amount actually apportioned by the auditor to the several funds was only $2,738,236.65, leaving a balance in the treasury of $73,413.09, no part of which has been apportioned to any fund. True, in making the apportionment the auditor is authorized to correct any error “ which may have occurred in the apportionment of taxes at any previous settlement.” But, by correcting such errors, the amount to be apportioned is neither increased nor diminished. Whatever sum may thus be taken from one fund must be added to another. This has not been done in this case. The $73,413.09 of “ net balance of errors corrected” were ratably deducted from the several funds for which taxes were levied. Hence, the whole of this sum remains in the treasury of the county unappropriated, and may be made subject to any judgment which may be rendered in this cause.

Demurrers to first md fourth defenses sustained.

Johnson, J., dissented.